(Slip Opinion) OCTOBER TERM, 2005 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ZEDNER *v*. UNITED STATES

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

No. 05–5992.   Argued April 18, 2006—Decided June 5, 2006

The Speedy Trial Act of 1974 (Act) generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance.   18 U. S. C. §3161(c)(1).   Recognizing that criminal cases vary widely and that there are valid reasons for greater delay in particular cases, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start.   Section 3161(h)(8) permits a district court to grant a continuance and exclude the resulting delay if it makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial.   To promote compliance without needlessly subverting important criminal prosecutions, the Act provides that, if the trial does not begin on time and the defendant moves, before the trial's start or entry of a guilty plea, to dismiss, the district court must dismiss the charges, though it may choose whether to do so with or without prejudice.

   In April 1996, petitioner was indicted on charges arising from his attempt to open accounts using counterfeit United States bonds.   The District Court granted two "ends-of-justice" continuances, see §3161(h)(8).   When, at a November 8 status conference, petitioner requested another delay to January 1997, the court suggested that petitioner waive the application of the Act "for all time," and produced a preprinted waiver form for petitioner to sign.   At a January 31, 1997, status conference, the court granted petitioner another continuance so that he could attempt to authenticate the bonds, but made no mention of the Act and no findings to support excluding the 91 days between January 31 and petitioner's next court appearance on May 2 (1997 continuance).   Four years later, petitioner filed a motion to dis-

miss the indictment for failure to comply with the Act, which the Dis-
trict Court denied based on the waiver "for all time." In a 2003 trial,
petitioner was convicted. The Second Circuit affirmed. Acknowledg-
ing that a defendant's waiver of rights under the Act may be ineffec-
tive because of the public interest served by compliance with the Act,
the court found an exception for situations when the defendant
causes or contributes to the delay. It also suggested that the District
Court could have properly excluded the 91-day period based on the
ends of justice, given the case's complexity and the defense's request
for additional time to prepare.

*Held:*

1. Because a defendant may not prospectively waive the application
of the Act, petitioner's waiver "for all time" was ineffective. Pp. 9–12.

(a) The Act comprehensively regulates the time within which a
trial must begin. Section 3161(h), which details numerous categories
of delay that are not counted in applying the Act's deadlines, con-
spicuously has no provision excluding periods of delay during which a
defendant waives the Act's application. It is apparent from the Act's
terms that this was a considered omission. Instead of allowing de-
fendants to opt out, the Act demands that continuances fit within one
of §3161(h)'s specific exclusions. In deciding whether to grant an
ends-of-justice continuance, a court must consider a defendant's need
for "reasonable time to obtain counsel," "continuity of counsel," and
"effective preparation" of counsel. §3161(h)(8)(B)(iv). If a defendant
could simply waive the Act's application in order to secure more time,
no defendant would ever need to put such considerations before the
court under the rubric of an ends-of-justice exclusion. The Act's pur-
poses also cut against exclusion on the grounds of mere consent or
waiver. Were the Act solely designed to protect a defendant's right to
a speedy trial, such an application might make sense, but the Act
was also designed with the public interest firmly in mind. This in-
terpretation is entirely in accord with the Act's legislative history.
Pp. 9–11.

(b) This Court rejects the District Court's reliance on §3162(a)(2),
which provides that a defendant whose trial does not begin on time is
deemed to have waived the right to move for dismissal if that motion
is not filed prior to trial or entry of a guilty plea. That section makes
no mention of prospective waivers, and there is no reason to think
that Congress wanted to treat prospective and retrospective waivers
similarly. Allowing prospective waivers would seriously undermine
the Act because, in many cases, the prosecution, defense, and court
would all like to opt out, to the detriment of the public interest. Sec-
tion 3162(a)(2)'s retrospective waiver does not pose a comparable
danger. Because the prosecution and court cannot know until the

trial starts or the guilty plea is entered whether the defendant will forgo moving to dismiss, they retain a strong incentive to make sure the trial begins on time. Pp. 11–12.

2. Petitioner is not estopped from challenging the excludability under the Act of the 1997 continuance. Factors that "typically inform the decision whether to apply the [estoppel] doctrine in a particular case" include (1) whether "a party's later position [is] clearly inconsistent with its earlier position"; (2) "whether the party has succeeded in persuading a court to accept that . . . earlier position"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *New Hampshire* v. *Maine,* 532 U. S. 742, 750–751. None of the three possible "positions" taken by petitioner gives rise to an estoppel. First, recognizing an estoppel based on petitioner's promise not to move for dismissal under §3162(a)(2) would entirely swallow the Act's no-waiver policy. Second, petitioner's (mistaken) agreement that waivers are enforceable does not provide a ground for estoppel because petitioner did not "succee[d] in persuading" the District Court to accept the validity of prospective waivers. On the contrary, the District Court requested the waiver and produced the form for petitioner to sign. Even if the other factors favor estoppel, they do not predominate. Finally, petitioner's representation at the January 31 status conference that a continuance was needed to gather evidence of the bonds' authenticity does not support estoppel because that position was not "clearly inconsistent" with the position that he now takes in seeking dismissal, *i.e.,* that delay from that continuance was not excluded under the Act. Nothing in the discussion at the conference suggests that the question presented by the continuance request was viewed as anything other than a case-management question laying entirely within the District Court's discretion. Pp. 12–15.

3. When a district court makes no findings on the record to support a §3161(h)(8) continuance, harmless-error review is not appropriate. The Government argues that an express finding need not be entered contemporaneously and could be supplied on remand. But the Act requires express findings, see §3161(h)(8)(A), and at the very least implies that those findings must be put on the record by the time the district court rules on the motion to dismiss. Because the District Court made no such express findings, the 1997 continuance is not excluded from the speedy trial clock. This error is not subject to harmless-error review. Harmless-error review under Federal Rule of Criminal Procedure 52(a) presumptively applies to "*all* errors where a proper objection is made," *Neder* v. *United States,* 527 U. S. 1, 7, but strong support for an implied repeal of Rule 52(a) in this context

is provided by the Act's unequivocal provisions, which specify that a trial "*shall* commence" within 70 days, §3161(c)(1) (emphasis added), and that "*[n]o . . . period of delay*" from an ends-of-justice continuance "*shall be excludable*" from the time period unless the court sets forth its reasoning, §3161(h)(8)(A) (emphasis added).  Applying harmless-error review would also tend to undermine the detailed requirements of the provisions regulating ends-of-justice continuances.  Pp. 15–18.

4. Because the 91-day continuance, which was not excluded from the speedy trial clock, exceeded the maximum 70-day delay, the Act was violated, and there is no need to address whether other periods of delay were not excludable.  The District Court may determine in the first instance whether the dismissal in this case should be with or without prejudice.  Pp. 18–19.

401 F. 3d 36, reversed and remanded.

ALITO, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, SOUTER, THOMAS, GINSBURG, and BREYER, JJ., joined, and in which SCALIA, J., joined as to all but Part III–A–2. SCALIA, J., filed an opinion concurring in part and concurring in the judgment.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 05–5992

_____

## JACOB ZEDNER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 5, 2006]

JUSTICE ALITO delivered the opinion of the Court.

This case requires us to consider the application of the doctrines of waiver, judicial estoppel, and harmless error to a violation of the Speedy Trial Act of 1974 (Act), 18 U. S. C. §§3161–3174. The Act generally requires a federal criminal trial to begin within 70 days after a defendant is charged or makes an initial appearance, §3161(c)(1), but the Act contains a detailed scheme under which certain specified periods of delay are not counted. In this case, petitioner's trial did not begin within 70 days of indictment. Indeed, his trial did not commence until more than seven years after the filing of the indictment, but petitioner, at the suggestion of the trial judge, signed a blanket, prospective waiver of his rights under the Act. We address the following questions: whether this waiver was effective; whether petitioner is judicially estopped from challenging the validity of the waiver; and whether the trial judge's failure to make the findings required to exclude a period of delay under a particular provision of the Act, §3161(h)(8), was harmless error.

I

In March 1996, petitioner attempted to open accounts at

seven financial institutions using counterfeit $10 million United States bonds. The quality of the counterfeiting was, to put it mildly, not expert. One bond purported to be issued by the "Ministry of Finance of U. S. A." 401 F. 3d 36, 39 (CA2 2005) (internal quotation marks omitted). Others contained misspelled words such as "Thunted States" and the "Onited States" (United States), "Dhtladelphla" (Philadelphia), "Cgicago" (Chicago), and "forevev" (forever). *Id.,* at 39, n. 1 (internal quotation marks omitted). After petitioner presented these bonds, the Secret Service was contacted, and petitioner was arrested. Following arraignment on a criminal complaint, he was released on bond.

On April 4, 1996, a grand jury in the Eastern District of New York indicted petitioner on seven counts of attempting to defraud a financial institution, in violation of 18 U. S. C. §1344, and one count of knowingly possessing counterfeit obligations of the United States, in violation of §472. On June 26, the District Court, citing the complexity of the case, granted what is termed an "ends-of-justice" continuance, see §3161(h)(8)(B)(ii), until September 6. On September 6, the District Court granted another continuance, this time until November 8.

At the November 8 status conference, petitioner requested, without opposition from the Government, a further adjournment to January 1997. Concerned about the difficulty of fitting petitioner's trial into its heavily scheduled calendar and the prospect that petitioner might "only waive [the Act] for so long as it is convenient for [him] to waive," the District Court instructed petitioner as follows: "I think if I'm going to give you that long an adjournment, I will have to take a waiver for all time." App. 71. Petitioner's counsel responded that the defense would "waive for all time. That will not be a problem. That will not be an issue in this case." *Id.,* at 72.

The District Court then addressed petitioner directly

and appears to have attempted to explain the operation of a provision of the Act, 18 U. S. C. §3162(a)(2), under which a defendant whose trial does not begin on time is deemed to have waived the right to move for dismissal of the information or indictment if he or she does not file that motion prior to trial or entry of a guilty plea. The District Court reasoned: "[I]f you can waive [the Act] by inaction, *i. e.*, not raising the motion to dismiss, you can waive affirmatively, knowledgeably, intelligently your right to do so, your right to a speedy trial and your right to make a motion to dismiss for the speedy trial." App. 73. The court told petitioner that it was "prepared to start . . . trial right away," *ibid.,* but that if a continuance was granted, petitioner might have to wait some time for trial because the court had a "fairly big cas[e] . . . which [wa]s set to take eight months for trial." "[I]f that [trial] starts before you start," the court warned, "you may have to wait until that is done." *Id.,* at 74.

The District Court then produced a preprinted form— apparently of its own devising—captioned "Waiver of Speedy Trial Rights." *Id.,* at 79. The court led petitioner and his counsel through the form, and both signed it. Among other things, the form stated: "I wish to waive my rights to a speedy trial . . . under the Speedy Trial Act of 1974 (18 U. S. C. §3161 *et seq.*), under the Rules of this Circuit and under the Speedy Trial Plan adopted by this Court." *Ibid.* The form also stated: "I have been advised and fully understand that . . . I also waive any and all rights to make a motion to dismiss the indictment . . . against me for failure of the Court to give me a speedy trial and that I waive all of such rights to a speedy trial and to make such a motion or motions for all time." *Ibid.* After the form was signed, petitioner's counsel requested that a further status conference be scheduled for January 31, 1997, and the court agreed. *Id.,* at 77.

At the January 31 status conference, petitioner sought

yet another continuance "to tap . . . the proper channels to authenticate [the] bonds." *Id.,* at 81. Petitioner and the Government emphasized that this request raised no issue under the Act because petitioner had "waived for all time," though the Government suggested that it "would like to try the case sometime in 1997." *Ibid.* After a brief discussion between the court and petitioner's counsel about the need to investigate the authenticity of what seemed such obviously fake bonds, the court offered to set trial for May 5, 1997. *Id.,* at 86. The court admonished petitioner's counsel to "[g]et to work" and noted: "This [case] is a year old. That's enough for a criminal case." *Id.,* at 86, 85. Nevertheless, apparently satisfied with petitioner's waiver "for all time," the District Court made no mention of the Act and did not make any findings to support exclusion of the 91 days between January 31 and petitioner's next court appearance on May 2, 1997 (1997 continuance).

The four years that followed saw a variety of proceedings in petitioner's case, but no trial. See 401 F. 3d, at 40–41. Counsel sought to be relieved because petitioner insisted that he argue that the bonds were genuine, and the court ultimately granted counsel's request to withdraw. At the court's suggestion, petitioner was examined by a psychiatrist, who determined that petitioner was competent to stand trial. Petitioner then asked to proceed *pro se* and sought to serve subpoenas on, among others, the President, the Chairman of the Federal Reserve Board, the Attorney General, the Secretary of State, the late Chinese leader Chiang Kai-shek, and "'The Treasury Department of Treasury International Corporation.'" *Id.,* at 40; App. 129. After a year of quashed subpoenas, the District Court set the case for trial, only to conclude on the morning of jury selection that it had to inquire once again into petitioner's competency. The court dismissed the jury panel, found petitioner incompetent, and committed him to the custody of the Attorney General for hospitalization

and treatment. On interlocutory appeal, however, the Court of Appeals vacated that order and remanded for further hearings. In July and August 2000, the District Court held those hearings and received further briefing on the competency issue.

On March 7, 2001, while the competency issue remained under submission, petitioner moved to dismiss the indictment for failure to comply with the Act. The District Court denied the motion on the ground that petitioner had waived his Speedy Trial Act rights "for all time," mentioning in passing that the case was complex. *Id.,* at 128–129. In the same order, the court found petitioner incompetent. *Id.,* at 135. That latter determination was upheld on interlocutory appeal, and petitioner was committed for evaluation. After several months of hospitalization, petitioner was found to be delusional but competent to stand trial, and he was released.

Finally, on April 7, 2003, more than seven years after petitioner was indicted, his trial began. The jury found petitioner guilty on six counts of attempting to defraud a financial institution,[1] and the court sentenced him to 63 months of imprisonment.

The Court of Appeals affirmed the judgment of conviction.[2] Acknowledging that "a defendant's waiver of rights under the Speedy Trial Act may be ineffective" because of the public interest served by compliance with the Act, the Court of Appeals found an exception for situations "'when defendant's conduct causes or contributes to a period of delay.'" 401 F. 3d*,* at 43–44 (quoting *United States* v. *Gambino,* 59 F. 3d 353, 360 (CA2 1995)). "[D]oubt[ing]

--------

[1] The Government dismissed the other counts before trial.

[2] The Court of Appeals ultimately remanded the case for resentencing in light of *United States* v. *Booker,* 543 U. S. 220 (2005). That issue is not before us, though we note that the District Court has indicated it would impose the same 63-month sentence if the defendant is produced for resentencing. No. 96–CR–285 (TCP) (EDNY, Oct. 27, 2005).

that the public interest in expeditious prosecution would
be served by a rule that allows defendants to request a
delay and then protest the grant of their request," the
Court of Appeals held that petitioner would not be heard
to complain of the 91-day delay in early 1997. 401 F. 3d,
at 45. The Court of Appeals went on to suggest that there
"can be no doubt that the district court could have prop-
erly excluded this period of time based on the ends of
justice" in light of the complexity of the case and defense
counsel's request for additional time to prepare. *Ibid.*

We granted certiorari to resolve the disagreement
among the Courts of Appeals on the standard for analyz-
ing whether a defendant has made an effective waiver of
rights under the Act. 546 U. S. ___ (2006).

## II

As noted above, the Speedy Trial Act generally requires
a trial to begin within 70 days of the filing of an informa-
tion or indictment or the defendant's initial appearance,
18 U. S. C. §3161(c)(1), but the Act recognizes that crimi-
nal cases vary widely and that there are valid reasons for
greater delay in particular cases. To provide the neces-
sary flexibility, the Act includes a long and detailed list of
periods of delay that are excluded in computing the time
within which trial must start. See §3161(h). For example,
the Act excludes "delay resulting from other proceedings
concerning the defendant," §3161(h)(1), "delay resulting
from the absence or unavailability of the defendant or an
essential witness," §3161(h)(3), "delay resulting from the
fact that the defendant is mentally incompetent or physi-
cally unable to stand trial," §3161(h)(4), and "[a] reason-
able period of delay when the defendant is joined for trial
with a codefendant as to whom the time for trial has not
run and no motion for severance has been granted,"
§3161(h)(7).

Much of the Act's flexibility is furnished by §3161(h)(8),

Opinion of the Court

which governs ends-of-justice continuances, and which we set out in relevant part in the margin.[3]  This provision permits a district court to grant a continuance and to exclude the resulting delay if the court, after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the

——————

[3] Title 18 U. S. C. §3161(h)(8) provides: "(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.  No such period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

"(B) The factors, among others, which a judge shall consider in determining whether to grant a continuance under subparagraph (A) of this paragraph in any case are as follows:

"(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

"(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

.          .          .          .          .

"(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

"(C) No continuance under subparagraph (A) of this paragraph shall be granted because of general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government."

public's and defendant's interests in a speedy trial. This provision gives the district court discretion—within limits and subject to specific procedures—to accommodate limited delays for case-specific needs.

To promote compliance with its requirements, the Act contains enforcement and sanctions provisions. If a trial does not begin on time, the defendant may move, before the start of trial or the entry of a guilty plea, to dismiss the charges, and if a meritorious and timely motion to dismiss is filed, the district court must dismiss the charges, though it may choose whether to dismiss with or without prejudice. In making that choice, the court must take into account, among other things, "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of [the Act] and on the administration of justice." §3162(a)(2).

This scheme is designed to promote compliance with the Act without needlessly subverting important criminal prosecutions. The more severe sanction (dismissal with prejudice) is available for use where appropriate, and the knowledge that a violation could potentially result in the imposition of this sanction gives the prosecution a powerful incentive to be careful about compliance. The less severe sanction (dismissal without prejudice) lets the court avoid unduly impairing the enforcement of federal criminal laws—though even this sanction imposes some costs on the prosecution and the court, which further encourages compliance. When an indictment is dismissed without prejudice, the prosecutor may of course seek—and in the great majority of cases will be able to obtain—a new indictment, for even if "the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned . . . within six calendar months of the date of the dismissal." §3288.

With this background in mind, we turn to the questions

presented by the unusual procedures followed in this case.

## III

Petitioner contends, and the Government does not seriously dispute, that a defendant may not prospectively waive the application of the Act.[4]  We agree.

### A

#### 1

As our discussion above suggests, the Speedy Trial Act comprehensively regulates the time within which a trial must begin.  Section 3161(h) specifies in detail numerous categories of delay that are not counted in applying the Act's deadlines.  Conspicuously, §3161(h) has no provision excluding periods of delay during which a defendant waives the application of the Act, and it is apparent from the terms of the Act that this omission was a considered one.  Instead of simply allowing defendants to opt out of the Act, the Act demands that defense continuance requests fit within one of the specific exclusions set out in subsection (h).  Subsection (h)(8), which permits ends-of-justice continuances, was plainly meant to cover many of these requests.  Among the factors that a district court must consider in deciding whether to grant an ends-of-justice continuance are a defendant's need for "reasonable time to obtain counsel," "continuity of counsel," and "effective preparation" of counsel.  §3161(h)(8)(B)(iv).  If a defendant could simply waive the application of the Act whenever he or she wanted more time, no defendant would ever need to put such considerations before the court under the rubric of an ends-of-justice exclusion.

The purposes of the Act also cut against exclusion on the grounds of mere consent or waiver.  If the Act were designed solely to protect a defendant's right to a speedy

———————

[4] We left this question open in *New York* v. *Hill,* 528 U. S. 110, 117, n. 2 (2000).

trial, it would make sense to allow a defendant to waive the application of the Act. But the Act was designed with the public interest firmly in mind. See, *e.g.,* 18 U. S. C. §3161(h)(8)(A) (to exclude delay resulting from a continuance—even one "granted . . . at the request of the defendant"—the district court must find "that the ends of justice served . . . outweigh the *best interest of the public* and the defendant *in a speedy trial*" (emphasis added)). That public interest cannot be served, the Act recognizes, if defendants may opt out of the Act entirely.

2

This interpretation is entirely in accord with the Act's legislative history. As both the 1974 House and Senate Reports illustrate, the Act was designed not just to benefit defendants but also to serve the public interest by, among other things, reducing defendants' opportunity to commit crimes while on pretrial release and preventing extended pretrial delay from impairing the deterrent effect of punishment. See S. Rep. No. 93–1021, pp. 6–8 (citing "bail problems," offenses committed during pretrial release, and the "seriously undermined . . . deterrent value of the criminal process" as "the debilitating effect[s] of court delay upon our criminal justice system"); H. R. Rep. No. 93–1508, p. 8 ("The purpose of this bill is to assist in reducing crime and the danger of recidivism by requiring speedy trials . . ."). The Senate Report accompanying the 1979 amendments to the Act put an even finer point on it: "[T]he Act seeks to protect and promote speedy trial interests that go beyond the rights of the defendant; although the Sixth Amendment recognizes a societal interest in prompt dispositions, it primarily safeguards the defendant's speedy trial right—which may or may not be in accord with society's." S. Rep. No. 96–212, p. 29; see also *id.,* at 6; H. R. Rep. No. 96–390, p. 3 (1979). Because defendants may be content to remain on pretrial release,

and indeed may welcome delay, it is unsurprising that Congress refrained from empowering defendants to make prospective waivers of the Act's application. See S. Rep. No. 96–212, at 29 ("Because of the Act's emphasis on that societal right, a defendant ought not be permitted to waive rights that are not his or hers alone to relinquish").

B

The District Court reasoned that 18 U. S. C. §3162(a)(2) supports the conclusion that a defendant may prospectively waive the strictures of the Act. This provision states that "[f]ailure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." Because this provision in effect allows a defendant to waive a completed violation of the Act (by declining to move to dismiss before the start of trial or the entry of a guilty plea), it follows, so the District Court's reasoning went, that a defendant should be allowed to make a prospective waiver. We disagree.

It is significant that §3162(a)(2) makes no mention of prospective waivers, and there is no reason to think that Congress wanted to treat prospective and retrospective waivers similarly. Allowing prospective waivers would seriously undermine the Act because there are many cases—like the case at hand—in which the prosecution, the defense, and the court would all be happy to opt out of the Act, to the detriment of the public interest. The sort of retrospective waiver allowed by §3161(a)(2) does not pose a comparable danger because the prosecution and the court cannot know until the trial actually starts or the guilty plea is actually entered whether the defendant will forgo moving to dismiss. As a consequence, the prosecution and the court retain a strong incentive to make sure that the trial begins on time.

Instead of granting broad opt-out rights, §3162(a)(2)

serves two unrelated purposes. First, §3162(a)(2) assigns the role of spotting violations of the Act to defendants—for the obvious reason that they have the greatest incentive to perform this task.[5] Second, by requiring that a defendant move before the trial starts or a guilty plea is entered, §3162(a)(2) both limits the effects of a dismissal without prejudice (by ensuring that an expensive and time-consuming trial will not be mooted by a late-filed motion under the Act) and prevents undue defense gamesmanship.[6]

For these reasons, we reject the District Court's reliance on §3162(a)(2) and conclude a defendant may not prospectively waive the application of the Act. It follows that petitioner's waiver "for all time" was ineffective. We therefore turn to the Government's alternative grounds in support of the result below.

## IV
## A

The Government contends that because "petitioner's express waiver induced the district court to grant a continuance without making an express ends-of-justice find-

_____

[5] The possibility of obtaining a dismissal with prejudice plainly gives a defendant a strong incentive to police compliance, and even if a case is dismissed without prejudice, a defendant may derive some benefit. For example, the time and energy that the prosecution must expend in connection with obtaining a new indictment may be time and energy that the prosecution cannot devote to the preparation of its case.

[6] As noted, in order to promote compliance with the Act, Congress set the minimum permissible penalty at a level that would impose some costs on the prosecution and the court without unduly interfering with the enforcement of the criminal laws. By specifying that a defendant may not move for dismissal once the trial has commenced or a plea has been entered, the amount of inconvenience resulting from a dismissal without prejudice is limited, and defendants are restricted in their ability to use such a motion for strategic purposes. For example, defendants cannot wait to see how a trial is going (or how it comes out) before moving to dismiss.

ing . . ., basic principles of judicial estoppel preclude petitioner from enjoying the benefit of the continuance, but then challenging the lack of a finding." Brief for United States 10. In this case, however, we see no basis for applying the doctrine of judicial estoppel.

As this Court has explained:

> "'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.' *Davis* v. *Wakelee,* 156 U. S. 680, 689 (1895). This rule, known as judicial estoppel, 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.' *Pegram* v. *Herdrich,* 530 U. S. 211, 227, n. 8 (2000)." *New Hampshire* v. *Maine,* 532 U. S. 742, 749 (2001).

Although this estoppel doctrine is equitable and thus cannot be reduced to a precise formula or test,

> "several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position . . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.,* at 750–751 (citations and internal quotation marks omitted).

In applying this doctrine to the present case, we must first identify the "position" of petitioner's that the Gov-

ernment seeks to enforce. There are three possibilities: (1) petitioner's promise not to move for dismissal under §3162(a)(2), (2) petitioner's (implied) position that waivers of the Act are enforceable, and (3) petitioner's claim that counsel needed additional time to research the authenticity of the bonds. None of these gives rise to an estoppel.

First, we are unwilling to recognize an estoppel based on petitioner's promise not to move for dismissal because doing so would entirely swallow the Act's no-waiver policy. We see little difference between granting a defendant's request for a continuance in exchange for a promise not to move for dismissal and permitting a prospective waiver, and as we hold above, prospective waivers are inconsistent with the Act.

Second, petitioner's (mistaken) agreement that Speedy Trial Act waivers are valid also does not provide a ground for estoppel. Petitioner did not "succee[d] in persuading" the District Court to accept the proposition that prospective waivers of Speedy Trial Act rights are valid. On the contrary, it was the District Court that requested the waiver and produced the form for petitioner to sign. And while the other relevant factors (clear inconsistency and unfair advantage or detriment) might in isolation support the Government, we think they do not predominate where, as here, the Government itself accepted the District Court's interpretation without objection.

Finally, petitioner's representation to the District Court at the January 31 status conference that a continuance was needed to gather evidence of the bonds' authenticity does not support the Government's estoppel argument because the position that petitioner took then was not "clearly inconsistent" with the position that he now takes in seeking dismissal of the indictment. This would be a different case if petitioner had succeeded in persuading the District Court at the January 31 status conference that the factual predicate for a statutorily authorized

exclusion of delay could be established—for example, if defense counsel had obtained a continuance only by falsely representing that he was in the midst of working with an expert who might authenticate the bonds. In fact, however, the discussion at the January 31 status conference did not focus on the requirements of the Act. Rather, the court and the parties proceeded on the assumption that the court's waiver form was valid and that the Act could simply be disregarded. Nothing in the discussion at the conference suggests that the question presented by the defense continuance request was viewed as anything other than a case-management question that lay entirely within the scope of the District Court's discretion. Under these circumstances, the best understanding of the position taken by petitioner's attorney at the January 31 status conference is that granting the requested continuance would represent a sound exercise of the trial judge's discretion in managing its calendar. This position was not "clearly inconsistent" with petitioner's later position that the continuance was not permissible under the terms of the Act. Accordingly, we hold that petitioner is not estopped from challenging the excludability under the Act of the 1997 continuance.

## B

While conceding that the District Court "never made an express finding on the record" about the ends-of-justice balance, Brief for United States 30, the Government argues that such an express finding did not need to be entered contemporaneously—and could be supplied on remand—because, given the circumstances in 1997, the ends-of-justice balance in fact supported the 1997 continuance. We reject this argument. In the first place, the Act requires express findings, and in the second place, it does not permit those findings to be made on remand as the Government proposes.

The Act requires that when a district court grants an ends-of-justice continuance, it must "se[t] forth, in the record of the case, either orally or in writing, its reasons" for finding that the ends of justice are served and they outweigh other interests. 18 U. S. C. §3161(h)(8)(A). Although the Act is clear that the findings must be made, if only in the judge's mind, before granting the continuance (the continuance can only be "granted . . . on the basis of [the court's] findings"), the Act is ambiguous on precisely when those findings must be "se[t] forth, in the record of the case." However this ambiguity is resolved, at the very least the Act implies that those findings must be put on the record by the time a district court rules on a defendant's motion to dismiss under §3162(a)(2).[7] In ruling on a defendant's motion to dismiss, the court must tally the unexcluded days. This, in turn, requires identifying the excluded days. But §3161(h)(8)(A) is explicit that "[n]o . . . period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be excludable . . . unless the court sets forth . . . its reasons for [its] finding[s]." Thus, without on-the-record findings, there can be no exclusion under §3161(h)(8). Here, the District Court set forth no such findings at the January 31 status conference, and §3161(h)(8)(A) is not satisfied by the District Court's passing reference to the case's complexity in its ruling on petitioner's motion to dismiss. Therefore, the 1997 continuance is not excluded from the speedy trial clock.

The Government suggests that this error, stemming as it does from the District Court's technical failure to make an express finding, may be regarded as harmless. Brief for United States 31, n. 8. Harmless-error review under Federal Rule of Criminal Procedure 52(a) presumptively

---

[7] The best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance.

applies to "*all* errors where a proper objection is made," *Neder* v. *United States,* 527 U. S. 1, 7 (1999), and we have required "strong support" to find an implied repeal of Rule 52, *United States* v. *Vonn,* 535 U. S. 55, 65 (2002). We conclude, however, that the provisions of the Act provide such support here.

The relevant provisions of the Act are unequivocal. If a defendant pleads not guilty, the trial "*shall* commence" within 70 days "from the filing date (and making public) of the information or indictment" or from the defendant's initial appearance, whichever is later. §3161(c)(1) (emphasis added). Delay resulting from an ends-of-justice continuance is excluded from this time period, but *"[n]o such period of delay . . . shall be excludable* under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." §3161(h)(8)(A) (emphasis added). When a trial is not commenced within the prescribed period of time, "the information or indictment *shall be dismissed* on motion of the defendant." §3162(a)(2) (emphasis added). A straightforward reading of these provisions leads to the conclusion that if a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed. The argument that the District Court's failure to make the prescribed findings may be excused as harmless error is hard to square with the Act's categorical terms. See *Alabama* v. *Bozeman,* 533 U. S. 146, 153–154 (2001) (no "'harmless'" or "'technical'" violations of the Interstate Agreement on Detainers' "antishuttling" provision in light of its "absolute language").

Applying the harmless-error rule would also tend to

undermine the detailed requirements of the provisions
regulating ends-of-justice continuances.  The exclusion of
delay resulting from an ends-of-justice continuance is the
most open-ended type of exclusion recognized under the
Act and, in allowing district courts to grant such continu-
ances, Congress clearly meant to give district judges a
measure of flexibility in accommodating unusual, complex,
and difficult cases.  But it is equally clear that Congress,
knowing that the many sound grounds for granting ends-
of-justice continuances could not be rigidly structured, saw
a danger that such continuances could get out of hand and
subvert the Act's detailed scheme.    The strategy of
§3161(h)(8), then, is to counteract substantive open-
endedness with procedural strictness.    This provision
demands on-the-record findings and specifies in some
detail certain factors that a judge must consider in making
those findings.  Excusing the failure to make these find-
ings as harmless error would be inconsistent with the
strategy embodied in §3161(h).  Such an approach would
almost always lead to a finding of harmless error because
the simple failure to make a record of this sort is unlikely
to affect the defendant's rights.  We thus conclude that
when a district court makes no findings on the record in
support of an §3161(h)(8) continuance, harmless-error
review is not appropriate.

V

We hold that that the 91-day continuance granted on
January 31 was not excluded from petitioner's speedy trial
clock.  Because this continuance by itself exceeded the
maximum 70-day delay provided in §3161(c)(1), the Act
was violated, and we need not address whether any other
periods of delay during petitioner's case were not exclud-
able.  The sanction for a violation of the Act is dismissal,
but we leave it to the District Court to determine in the
first instance whether dismissal should be with or without

prejudice. See §3162(a)(2). The judgment of the Court of Appeals is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

# SUPREME COURT OF THE UNITED STATES

————

No. 05–5992

————

## JACOB ZEDNER, PETITIONER *v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE SECOND CIRCUIT

[June 5, 2006]

JUSTICE SCALIA, concurring in part and concurring in
the judgment.

I concur in the opinion of the Court with the exception of
its discussion of legislative history in Part III–A–2. For
reasons I have expressed elsewhere, I believe that the only
language that constitutes "a Law" within the meaning of
the Bicameralism and Presentment Clause of Article I, §7,
and hence the only language adopted in a fashion that
entitles it to our attention, is the text of the enacted stat-
ute. See, *e.g., Conroy* v. *Aniskoff*, 507 U. S. 511, 518–528
(1993) (SCALIA, J., concurring in judgment). Here, the
Court looks to legislative history even though the remain-
der of its opinion amply establishes that the Speedy Trial
Act is unambiguous. The Act's language rejects the possi-
bility of a prospective waiver, and even expresses the very
point that the Court relies on legislative history to sup-
port—that the Act protects the interests of the public as
well as those of the defendant. See *ante,* at 9–10 (citing 18
U. S. C. §3161(h)(8)(A)). Use of legislative history in this
context thus conflicts not just with my own views but with
this Court's repeated statements that when the language
of the statute is plain, legislative history is irrelevant.
See, *e.g., United States* v. *Gonzales*, 520 U. S. 1, 6 (1997).
"We have stated time and again that courts must presume
that a legislature says in a statute what it means and
means in a statute what it says there. When the words of

a statute are unambiguous, then, this first canon is also the last: the judicial inquiry is complete." *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253–254 (1992) (citations and internal quotation marks omitted).

It may seem that there is no harm in using committee reports and other such sources when they are merely in accord with the plain meaning of the Act. But this sort of intellectual piling-on has addictive consequences. To begin with, it accustoms us to believing that what is said by a single person in a floor debate or by a committee report represents the view of Congress as a whole—so that we sometimes even will say (when referring to a floor statement and committee report) that "Congress has expressed" thus-and-so. See, *e.g., Conroy, supra,* at 516–517. There is no basis either in law or in reality for this naive belief. Moreover, if legislative history is relevant when it confirms the plain meaning of the statutory text, it should also be relevant when it contradicts the plain meaning, thus rendering what is plain ambiguous. Because the use of legislative history is illegitimate and ill advised in the interpretation of any statute—and especially a statute that is clear on its face—I do not join this portion of the Court's opinion.